**In the Matter of Raymond C. SMITH, Bankrupt.**

**No. 64–BK–3091–W.**

United States District Court
N. D. Iowa, W. D.
March 25, 1966.

74

John Beardsley, Onawa, Iowa, for bankrupt.

Frank Whicher, Sioux City, Iowa, trustee.

HANSON, District Judge.

This is a review of a ruling made by the Referee on February 23, 1965.

The petitioner filed his petition in bankruptcy on May 13, 1964. On August 3, 1964, the petitioner was discharged. A trustee was duly appointed to take charge of the assets.

The dispute here is between the bankrupt and the trustee and involves two checks (one for $897.31 and another for $400.06). The $897.31 check arose out of a feed grain contract with the United States. This feed grain contract was entered into prior to bankruptcy adjudication but the check was received after the bankruptcy adjudication. The date of receipt was September 8, 1964. A partial payment on this contract had been received prior to bankruptcy and the money received in that partial payment is not being claimed by the trustee.

The $400.06 check arose out of a wheat contract entered into between the bankrupt and the United States. Like the feed grain contract, it was entered into prior to the adjudication of bankruptcy but the check was not received until September 8, 1964.

Copies of the two contracts were presented to the Referee prior to his ruling and these contracts have been certified to the court as part of the trustee's resistance together with the minutes of the hearing before the Referee.

The feed grain contract states:

"I, the undersigned, agree to comply with the provisions of the Feed Grain Program. I understand that my rights and obligations thereunder will be governed by regulations issued to carry out such program and that price support, diversion payments and price support payments shall be made available only if the total number of acres stated in column 7 above is diverted from the production of such feed grain in accordance with the provisions of the program. I further agree that my

share of the diversion payment as shown in Part IV is fair and equitable. If for any reason any advance payment received by me exceeds the total final payment to which I am entitled, I agree to refund any advance to which I am not entitled, and in the event I earn no payment under the program, I agree to return the entire advance payment."

The wheat contract states:

"I, the undersigned, agree to comply with the provisions of the Wheat Program. I understand that my rights and obligations thereunder will be governed by regulations issued to carry out such program. I hereby agree that my share of the diversion payments as shown in Paragraph III is fair and equitable. I further understand that if the cropland acreage on this farm is increased, the total conserving requirement is subject to revision. If there is not diverted from the production of wheat in accordance with the provisions of the program an acreage on the farm equal to the total number of acres in columns 8 and 9 above, the producers on the farm will not be eligible for diversion payment."

The Referee ruled that the two checks in toto must be turned over to the trustee as part of the assets in bankruptcy. It is from that ruling that the bankrupt appeals. The Referee relied on Title 11 U.S.C. § 110(a) (5) and (6).

The court will first consider clause (a) (5). That clause states:

"The trustee of the estate * * * shall in turn be vested by operation of law with the title of the bankrupt * * * to all of the following kinds of property wherever located * * *: property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

In ruling on this clause, the court has held it to be assignable if it had "decided value" and "capable of estima-tion." Page v. Edmunds, 187 U.S. 596, 23 S.Ct. 200, 47 L.Ed. 318. Also it must be assignable or transferable. Eaton v. Boston Safe Deposit & Trust Co., 240 U.S. 427, 36 S.Ct. 391, 60 L.Ed. 723; Hull v. Farmers' Loan & Trust Co., 245 U.S. 312, 38 S.Ct. 103, 62 L.Ed. 312. The Referee relied upon the assignability test and found the contract rights to be assignable.

7 C.F.R. Section 1421.3734(c) states in part: "Payments earned under a program cannot be assigned. * * *" 7 C.F.R. Section 728.74(b) states in part: "Payments earned under this program may not be assigned." These two regulations deal with the feed grain program and the wheat program. This problem has been considered recently in Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428. These regulations and 31 U.S.C. § 203, are construed in the light of their purpose to give protection to the Government. In the present case, it appears that to say that the assignments could be made prior to the time that the programs are completed would endanger the Government's position and violate the statute and regulations. These regulations were not brought to the attention of the Referee although non-assignability was claimed. The Referee has made no findings that would show that the assignment as of the date of bankruptcy and prior to completion of the program would not endanger the Government's position.

Further, there is no evidence to show that enjoyment was only contingent or postponed and nothing was shown to have been earned at the time of bankruptcy in the sense that it had a decided value capable of estimation. Therefore, the proceeds under these two contracts were not assignable even if 31 U.S.C. § 203, and the Government regulations were not involved.

Further, the trustee made no findings to show that the property came under subsection (a) (5) except as he based his decision on assignability. The court must conclude that subsection (a) (5) and the findings made thereunder do not support the trustee.

 Clause (6) of Section 110(a) states in part:

"The trustee of the estate * * * shall in turn be vested by operation of law with the title of the bankrupt * * * to all of the following kinds of property wherever located * *: rights of action arising upon contracts * * *."

Such rights held by the bankrupt at the time of adjudication of bankruptcy pass to the trustee. There are, however, several requirements that must be met. (1) As of the date of the filing of the petition in bankruptcy there must be a res or chose in action in existence. This means a definable interest in some res whether that res be corporeal property or a chose in action. Fournier v. Rosenblum, 1 Cir., 318 F.2d 525; Harlan v. Archer, 4 Cir., 79 F.2d 673. One of the main tests in determining whether there is a definable interest in the bankrupt is whether that interest could be assigned. Newhall v. Casey, D.C., 18 F.2d 447. (2) The contract must be one that does not call for performance in the future. Stein v. Leibowitt, 3 Cir., 93 F.2d 333, certiorari denied 303 U.S. 652, 58 S.Ct. 750, 82 L.Ed. 1113. In other words, the trustee is vested under Section 110(a) (6) with rights of action arising from non-executory contracts which the bankrupt may possess. Crittenden v. Lines, 9 Cir., 327 F.2d 537. The exception to this rule applies when the profits of the contract can be divided between that earned prior to bankruptcy and that earned subsequent to bankruptcy. See Stein v. Leibowitt, supra; Hudson v. Wylie, 9 Cir., 242 F.2d 435.

It follows that clearly the trustee has no rights under Section 110(a) (6) where there was no definite assignable right as of the date of adjudication of bankruptcy and where clearly the contracts were to be performed at least in part in the future, but the Referee made no findings as to divisability of the profits.

Under Section 110(b), the trustee may assume executory contracts. He did not do so in this case. The trustee does not now claim that he would have, if he could have, assumed the two contracts held by the bankrupt. The trustee does now claim that the contracts were not scheduled as assets and a review of the schedule shows this to be correct. It seems unlikely to the court that these contracts were required to be scheduled. Assignability of the contract is one of the tests in determining that question. See Vol. 1 Collier, Section 7.11, pp. 988, 989. It also seems unlikely that the trustee would have assumed the contracts because the cost of the labor in performing them would be an administrative expense with a claim of priority. In any event, the question of assumption of an executory contract can properly be reconsidered by the Referee on remand.

The findings as made cannot support a decree in favor of the trustee under Title 11 U.S.C. § 110(a) (5), (6).

Accordingly, it is hereby ordered that this cause is reversed and remanded for further consideration not inconsistent with this Memorandum.